UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEITH R.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 20 C 3691 |
| v. | ) |
| | ) Magistrate Judge Gabriel A. Fuentes |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**[3]

Before the Court is Plaintiff Keith R.'s motion seeking remand of the Administrative Law Judge's ("ALJ") opinion denying his application for disability insurance benefits ("DIB") (D.E. 21), and the Commissioner's cross motion to affirm that decision. (D.E. 25).

**I.  PROCEDURAL HISTORY**

Plaintiff filed his claim for DIB on February 16, 2017, alleging he has been disabled due to liver problems since August 7, 2014; his date last insured ("DLI") was December 31, 2015. (R. 106, 107, 109.) On November 15, 2018, Plaintiff, who was represented by counsel, testified at a hearing before an administrative law judge ("ALJ"). A vocational expert ("VE") also testified at

---

[1] Plaintiff's surname has been omitted from this opinion in compliance with the Court's Internal Operating Procedure No. 22.

[2] The Court substitutes Kilolo Kijakazi for her predecessor, Andrew Saul, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On August 31, 2020, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to this Court for all proceedings, including entry of final judgment. (D.E. 12.)

the hearing. On April 30, 2019, the ALJ denied Plaintiff's claim for benefits, finding him not disabled under the Social Security Act. (R. 12.)[4] This appeal followed.

**II.    ALJ's DECISION**

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. (R. 15-42.) The ALJ found at Step One that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (R. 15.) At Step Two, the ALJ concluded that Plaintiff had the following severe impairments: major depressive disorder, anxiety, substance abuse disorder, ascites (excess abdominal fluid related to liver disease), cirrhosis of the liver, and obesity, and that Plaintiff's fatigue, insomnia, anemia, ventral hernia, altered mental state/seizures, hypothyroidism, esophageal lesion and thrombocytopenia (low platelet count) were not severe. (R. 17-18.) The ALJ concluded at Step Three that Plaintiff's impairments, alone or in combination, did not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). (R. 18.) Before Step Four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) except that he could occasionally stoop, kneel, crouch and crawl and never climb ladders, ropes, or scaffolds and have occasional interaction with co-workers and supervisors. (R. 26.)[5]

At Step Five, the ALJ concluded that based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs existing in significant numbers

---

[4] The Appeals Council ("AC") subsequently denied review of the opinion (R. 1-6), making the ALJ's decision the final decision of the Commissioner. *Butler v. Kijakazi*, 4 F.4th 498, 500 (7th Cir. 2021).

[5] Social Security regulations define "light work" as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . the full range of light work requires standing or walking, on and off, or a total of approximately six hours in an eight-hour workday." SSR 83-10 (ssa.gov), last visited on May 22, 2023.

2

in the national economy, leading to a finding that he is not disabled under the Social Security Act prior to his DLI. (R. 42.)

**III.   ANALYSIS**

    **A.   Legal Standard**

An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, – U.S. –, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. The Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination. Rather, this court asks whether the ALJ's decision reflects an adequate logical bridge from the evidence to the conclusions." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (citations and quotations omitted). The claimant has the burden of proof at steps one through four of the five-step sequential process for determining disability. *See Mandrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022). At Step Five, the burden of proof shifts to the Commissioner of Social Security to show that the claimant can adjust to other work existing in "a significant number of jobs…in the national economy." *See Brace v. Saul*, 970 F.3d 818, 820 (7th Cir. 2020).

The ALJ also has a basic obligation to develop a full and fair record, and to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny

3

benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008).

Plaintiff makes two arguments in favor of remand: (1) the ALJ did not evaluate Plaintiff's physical RFC in accordance with SSR 96-8p and (2) the ALJ did not evaluate Plaintiff's allegations in accordance with SSR 16-3p. (Pl. Mem. in Support of Sum. J. at 2, 11). We will address each allegation in turn, starting with Plaintiff's second assignment of error because the ALJ's consideration of the severity of Plaintiff's symptoms bears on her RFC determination. In reaching our conclusion, we recognize that while the ALJ also discussed evidence from 2016 and beyond, she properly focused her determination on Plaintiff's condition and ability to work prior to his DLI of December 31, 2015.

**A.     The ALJ Properly Evaluated Plaintiff's Subjective Symptoms.**

Social Security Regulation 16-3p guides an ALJ about how to evaluate the intensity and persistence of a claimant's subjective symptoms so that he or she can determine how those symptoms might limit the claimant's ability to perform work-related activities.[6] As the ALJ explained, the question "is not whether such symptoms exist, but whether they occur with such frequency, duration, or severity as to reduce the claimant's residual functional capacity or to preclude all work activity on a continuing and regular basis." (R. 38.)

The regulations also state that when complaints of pain are reported in excess of what would be expected by the medical evidence, the ALJ should examine the claimant's work record, observations of treating doctors and others regarding the nature of the claimant's symptoms, precipitating and aggravating factors, the use of medication and other treatment to relieve symptoms, functional restrictions, and daily activities. 20 CFR § 404.1529, SSR 16-3p. An ALJ

---

[6] SSR 16-3p (ssa.gov), last visited on May 26, 2023.

4

need not discuss every detail in the record as it relates to every factor. *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021). Summaries of medical evidence, while definitionally "partial and selective," are appropriate. *Id.* at 901. Still, although ALJs do not need to address every piece of evidence in the record, ALJs may not ignore an entire line of evidence contrary to their ruling. *Reinaas v. Saul*, 953 F.3d 461, 467 (7th Cir. 2020). As long as an ALJ gives specific reasons supported by the record, we will not overturn a credibility determination unless it is patently wrong. *Grotts v. Kijakazi*, 27 F.4th 1273, 1278–79 (7th Cir. 2022).

In finding that Plaintiff's statements about the intensity and severity of his symptoms were not entirely consistent with the medical evidence, the ALJ first acknowledged Plaintiff's testimony about his symptoms, specifically that he was unable to work full time because he was easily fatigued, he was able to sit for three hours at a time, and he could stand for two hours before experiencing lower abdominal pain, which he alleviated by walking around. The ALJ noted that Plaintiff also testified that he could walk four blocks at a time, lift 25 pounds, and needed a cane to lean on. (R. 27.)

After next discussing Plaintiff's medical history in considerable detail, the ALJ explained why the evidence did not support Plaintiff's testimony about the severity of his pain and other symptoms. Specifically, the ALJ noted the following medical evidence that was inconsistent with Plaintiff's claims that his abdominal pain and fatigue were disabling:

- Although Plaintiff had cirrhosis of the liver and was symptomatic with ascites, after having fluid drained from his abdomen in August 2014, these issues were generally controlled with diuretics and abstention from alcohol. (R. 28-32, 38.)

- While acknowledging Plaintiff's complaints of fatigue and abdominal pain, the ALJ pointed to numerous medical reports throughout the relevant period where Plaintiff was assessed as doing well, including evidence that in March 2015 he reported feeling good and that in August 2015, despite appearing "malnourished, anxious, moderately ill, and tired appearing," all of his labs looked good and he reported to one of his doctors that he

5

was able to walk up to a mile and climb three flights of stairs before becoming tired; additionally, his exercise tolerance was greater than 4 METS. (R. 29, 30, 38.)[7]

- In September 2015, although Plaintiff was diagnosed with Stage 1 encephalopathy, it was only "mildly active," and in October a doctor assessed him as looking "malnourished, anxiety (sic) and severely ill." (*Id.*) However, in 2016 (which the ALJ noted was after Plaintiff's DLI), his encephalopathy resolved with medication. (*Id.*)

- There is no evidence that Plaintiff was using his cane prior to his DLI and thus the ALJ did not consider it in her RFC assessment. (*Id.*)

- The ALJ also acknowledged that Plaintiff complained of fatigue for a month in September 2014 and then again on an ongoing basis between May and October 2015, but that Plaintiff's doctors never discovered the source of the fatigue, which could have been caused by his ascites, anemia, insomnia, and depression. The ALJ noted that during the same time he was complaining of fatigue, Plaintiff also reported feeling good, and concluded that Plaintiff's fatigue on its own caused no more than minimal impact on his ability to function. (R. 18.)

Plaintiff argues that the ALJ did not do enough to explain why and how she weighed Plaintiff's symptoms and how she analyzed the evidence as it supported (or did not support) those symptoms; however, his "evidence" of the ALJ's error is little more than a repetitive listing of his various diagnoses and symptoms. (Pl. Mem. at 4, 9, 10, 11).[8] As far as we can tell, Plaintiff is implying that the ALJ must not have considered Plaintiff's limitations enough because it is unlikely or impossible that someone with those diagnoses would be able to work. But a diagnosis or symptom on its own does not establish the severity of an individual's impairment or function as proof that the ALJ erred in deciding that Plaintiff's allegations were not supported by substantial evidence. *Gladney v. Saul,* 857 Fed.Appx. 235, 238 (7th Cir. 2021), *citing Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005) ("conditions must not be confused with disabilities"). And, contrary

---

[7] METs stands for "metabolic equivalent of task;" work of moderate intensity uses from 3.0 to 6.0 METs and includes activities such as walking briskly, vacuuming, or raking leaves. Staying Active | The Nutrition Source | Harvard T.H. Chan School of Public Health, last visited on May 19, 2023.

[8] Plaintiff states that he "had thrombocytopenia, abdominal hernia, pitting edema, cecal thickening, hepatosplenomegaly, visible pain, abdominal drainage surgery, ascites, and cholelithiasis."

6

to Plaintiff's contention, the ALJ plainly considered both the evidence that supported Plaintiff's allegations and the evidence that did not, and the ALJ identified the reasons she did not find that Plaintiff's testimony supported a finding that he was entirely unable to work. To that end, we also disagree with Plaintiff's contention that the ALJ failed to evaluate Plaintiff's treatment history as it relates to his allegations; the ALJ provided an in-depth analysis of Plaintiff's various treatments including drainage of his ascites and how it plus a regular diuretic improved his condition, his hernia repair surgery, and his medication regimen, as well as their successes and failures, and that he still had abdominal pain at times which he was able to alleviate by walking around.

Finally, there is no error in the ALJ finding that Plaintiff's allegations about the severity of his symptoms were not entirely consistent with the evidence, and in the ALJ accepting Plaintiff's testimony that he could lift up to 25 pounds. The ALJ did not deny Plaintiff's pain and symptoms in their entirety, but only the degree to which they affect his ability to work at the RFC the ALJ determined. Instead, the ALJ weighed the medical evidence and noted where it was inconsistent with Plaintiff's testimony, particularly with respect to his ability to walk and stand; the fact that the ALJ may have accepted some of Plaintiff's testimony does not alter the ALJ's overall determination, particularly where Plaintiff does not point to contradictory evidence (other than his own unsubstantiated testimony) establishing greater limitations. 20 C.F.R. § 404.1529(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled."). The ALJ's subjective symptom analysis was not patently wrong and thus we will not disturb it.[9]

---

[9] We also find no error in the ALJ's failure to consider whether Plaintiff's prior work history was relevant to his allegations about the severity of his symptoms. The parties do not dispute that Plaintiff worked consistently until 2010 as a landscaper or that he was not able to perform landscape work during the relevant time period. However, neither of these facts bear on whether Plaintiff was able to perform work at the assigned light RFC level. Moreover, the ALJ's failure to discuss Plaintiff's work history when evaluating his symptoms is not grounds for remand. *Loveless v. Colvin,* 801 F.3d 502, 508 (7th Cir. 2016) (prior work history does not entitle claimant to presumption of credibility).

*Murphy v. Colvin,* 750 F.3d 811, 815 (7th Cir. 2014); *see also Bates v. Colvin,* 736 F.3d 1093, 1098 (7th Cir. 2013) (court's review of ALJ's symptom evaluation is "extremely deferential").

### B. The ALJ Properly Evaluated Plaintiff's Physical RFC

Plaintiff makes a number of allegations that the ALJ's RFC determination was deficient. First, he argues that the RFC determination was inadequate because the ALJ only stated that Plaintiff could "perform light work as defined in 20 CFR § 404.1567(b)" but "did not describe the maximum amount of standing, sitting, walking and arm and leg control operation that Plaintiff could do" and did not provide a "basis in the record" for the RFC. (Pl. Mem. at 2-4). We disagree.

A claimant's RFC is the maximum work that she can perform despite any limitations. *See* 20 C.F.R. § 404.1545(a)(1); Social Security Ruling 96-8p, 1996 WL 374184, at *2. And although the regulations emphasize that the ALJ must identify an individual's functional limitations before expressing the RFC in terms of exertional levels (*i.e.*, sedentary, light, medium, heavy, and very heavy), the Seventh Circuit has made it clear that "a decision lacking a seven-part function-by-function written account of the claimant's exertional capacity does not necessarily require remand [if the court] can tell that the ALJ considered the claimant's ability to perform all seven functions." *Jeske v. Saul*, 955 F.3d 583, 595 (7th Cir. 2020).[10] Moreover, as *Jeske* explains, an ALJ need not specifically mention every function if the claimant has not alleged a particular limitation and the record lacks information that one exists, or if the ALJ finds the claimant's allegations about a limitation not credible. *Id.* In this case, we find that the ALJ supported with substantial evidence her consideration of Plaintiff's ability to undertake each of the seven functions that made up his RFC. The ALJ acknowledged Plaintiff's testimony that he was able to lift 25 pounds as well as

---

[10] The seven functions are standing, sitting, walking, lifting, carrying, pushing, and pulling.

evidence that he was able to walk up to a mile and climb three flights of stairs before becoming tired, and that his exercise tolerance was greater than 4 METS. (R. 38, 30.)

Plaintiff makes no allegations that he was limited in his ability to push or pull, and the medical record reflects no such limitations either; therefore the ALJ's omission of them from the RFC is not grounds for remand.[11] Like the *Jeske* court explained, "[b]ecause the ALJ overtly inspected this evidence [on Plaintiff's ability to perform strength functions]," we are confident that the ALJ considered those functions when assigning Plaintiff an RFC for light work with additional limitations." *Id.* at 595. And while Plaintiff argues that the ALJ should have better explained how his various diagnoses impacted specific RFC limitations, he points to no evidence that any particular symptom, diagnosis, or impairment caused any limitation greater than those in the RFC. *See Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018) (holding that the claimant must "establish not just the existence of [her] conditions, but ... that they support specific limitations affecting her capacity to work").[12]

To this specific point, we again note that Plaintiff spends a considerable amount of his argument conflating his diagnoses with the limitations he argues stem from those diagnoses. (Pl. Mem. at 4, 7; Reply at 1-2). Yet he fails to point out how or where the medical evidence supports

---

[11] After considerable leading from the ALJ, Plaintiff eventually testified that he could sit for three hours before experiencing pain in his lower abdomen. (R. 65-66.) It is unclear how long he needed to be in another position before being able to sit again; he testified variously that he would "refill my water and get me some more fruit" after sitting, and that he'd just begun stretching to alleviate the pain. (*Id.*). After testifying that he could stand for two hours before experiencing pain, Plaintiff said that he would "get up and walk around" to help the pain; it is not clear if he was referring to walking around after two hours of standing or some other activity. (*Id.*) In any event, Plaintiff points to no evidence in the record to support his testimony about the limits in his ability to sit or stand.

[12] Plaintiff also contends that he is not asking the Court to reweigh the evidence, but to remand because the ALJ has not explained how she weighed the evidence in the first place. We disagree. As we explained above, throughout her opinion, the ALJ describes both the medical evidence that supports Plaintiff's claims as well as that which undermines his contention that he is disabled, including the evidence that specifically supported her finding that Plaintiff was able to perform work at the light exertional level despite his impairments. There is no error.

9

limitations beyond those assessed by the RFC. For example, in his reply brief, Plaintiff contends that his "abdominal pain and tenderness to palpitation, hernias, and inflammation and enlargement of organs within the abdomen" would make it difficult to lift because lifting causes abdominal pressure if the lifted item comes in contact with the abdomen. (Reply at 2.) But Plaintiff points to no evidence to support his speculation that *his* ability to lift was affected by his symptoms and diagnoses and he fails to show that *his* ability to lift or perform other functional activities were more affected by a particular diagnosis beyond the limits determined by the ALJ, which limitations were based on Plaintiff's own testimony about his ability to lift.

Next, Plaintiff contends that because there is no medical opinion setting forth the specific limitations in the RFC, the RFC assessed by the ALJ represents an impermissible independent medical determination, citing *Garcia v. Colvin,* 741 F.3d 758, 762 (7th Cir. 2013). But *Garcia* is distinguishable. In *Garcia,* the Seventh Circuit reversed and remanded an ALJ opinion that discounted two medical opinions that were both based on extensive medical records and the doctors' own examinations of the claimant's significant and extensive health problems, and whom the appeals court described as "one of the most seriously disabled applicants . . . we've encountered in many years." *Id.* at 762. Notably, the claimant in *Garcia* suffered from some of the same impairments as Plaintiff here – cirrhosis due to alcoholism and resultant abdominal pain, and low platelet count – but to an extent so severe that while he needed a liver transplant, he was judged too sick to undergo one, and another doctor described his condition as "chronic and terminal." *Id.* at 759. The Seventh Circuit's decision to remand rested less on the fact that the ALJ made his own independent medical decision and much more on the fact that the Court could not understand how the ALJ came to reject the opinions of the two doctors in the first place.

In contrast, Plaintiff's medical records and even his own testimony describe impairments that are much less severe, and there is no medical opinion that Plaintiff was too sick to work. Indeed, one of his doctors opined that Plaintiff's liver numbers had improved enough that he likely would not need a transplant, and although his platelet count was low, it never caused him any problems or required any treatment. The ALJ further discussed evidence that Plaintiff's ascites was controlled with diuretics and that his cirrhosis improved when he abstained from alcohol. (R. 28-29.) She noted that throughout the relevant period, Plaintiff's blood work generally looked good and that although he developed encephalopathy in late 2015, it was only mildly active. (*Id.*)

More importantly, even absent a doctor's opinion setting forth functional limitations, we are able to trace the medical evidence to the ALJ's determination that Plaintiff was able to perform light work. In this case, the only medical opinions in the record are from state agency doctors who did not have enough information at the time evaluate Plaintiff's claim; the ALJ gave these opinions no weight because they did not account for medical evidence after the date they were rendered and thus did not consider limitations from Plaintiff's cirrhosis and hernia. But contrary to Plaintiff's argument, the ALJ did not substitute his own lay opinion for that of a medical expert. Specifically, as described above, the ALJ relied upon evidence in the record that Plaintiff could lift 25 pounds, walk for up to a mile, climb three flights of stairs, and exercise at a level of 4 METS, all of which are consistent with work at the light exertional level. *See, Suide v. Astrue,* 371 Fed.Appx. 684, 690 (7th Cir. 2010) (where ALJ rejects all medical opinions, remainder of the record must support RFC). Thus, we find that the RFC was supported by substantial evidence.

Next, Plaintiff argues that the ALJ failed to consider his non-severe fatigue in combination with his other impairments before determining his RFC, suggesting that his testimony about his fatigue along with his low platelet count support a finding that he would be off-task for 10 percent

11

of the workday.[13] But as we discuss above, the ALJ acknowledged the two time periods when Plaintiff complained of fatigue and then noted that even Plaintiff's doctors were unable to determine the source of that fatigue; the ALJ also specifically explained why the evidence showed that Plaintiff's low platelet count did not cause any limitations. Moreover, the ALJ also determined that regardless of the source of Plaintiff's fatigue (which the ALJ noted could have been caused by Plaintiff's ascites, insomnia, anemia, or depression), as a symptom it caused no more than minimal limitations on his ability to work. Therefore, we find that the ALJ supported with substantial evidence her consideration of Plaintiff's fatigue.

Finally, we find that the ALJ's consideration of Plaintiff's obesity was supported by substantial evidence. Specifically, the ALJ explained that in assigning Plaintiff an RFC, she took into account the fact that obesity can affect the cardiovascular systems and that it may limit an individual's ability to sustain activity on a regular and continuing basis, and considered this when assigning Plaintiff a light RFC with additional postural limitations. In response, Plaintiff argues that the ALJ needed to better explain how she considered Plaintiff's obesity in combination with his other impairments. (Pl. Reply at 6). Although we acknowledge that the ALJ's commentary on Plaintiff's obesity is not extensive, the burden remains on Plaintiff to "identify any evidence in the record that suggests greater limitations from her obesity than those identified by the ALJ." *Shumaker v. Colvin*, 632 F. App'x 861, 867 (7th Cir. 2015) (holding that claimant must

---

[13] Plaintiff contends that the evidence establishes that he testified "that he was quickly fatigued and napped for three hours daily." (Pl. Reply at 5). AlthoughPlaintiff did testify about his fatigue, the only notation in the record about his napping is from a function report he completed in August 2017, in which he stated that he napped for three hours in the afternoon but also described insomnia that kept him awake at night until 4 a.m. (R. 243.) Not only is it unclear if Plaintiff was describing his napping habits at the time he completed the function report or from during the relevant time period [before his DLI], his description of his sleep habits suggest that his fatigue during the day was a function of his staying awake at night. The ALJ specifically acknowledged that Plaintiff's insomnia might be a source of his fatigue before determining that it did not cause more than minimal limitations.

12

"explain how her obesity exacerbated her underlying impairments," *cited in, Marcine H. v. Kijakazi,* No. 22 C 730, 2023 WL 2631624, at *4 (N.D. Ill. Mar. 24, 2023). But instead of pointing to limitations supported by the medical record, once again Plaintiff merely lists his diagnoses and argues that they are "evidence" of additional limitations that the ALJ needed to address. Plaintiff's objections amount to little more than a disagreement about how the ALJ weighed that evidence, which we will not do. *Gedatus*, 994 F.3d at 900.[14]

The fact that Plaintiff may wish that the ALJ described her findings differently or in more detail, or explained how she considered every piece of evidence, does not disturb our finding. In looking at the ALJ's opinion as a whole, we can trace an accurate and logical bridge from the evidence to her conclusion that Plaintiff's symptoms were not as severe as he alleged and did not support a finding that he was disabled.

## CONCLUSION

For these reasons, the Court denies Plaintiff's motion for summary judgment. (D.E. 21) and grants Defendant's motion. (D.E. 25).

                                                            **ENTER:**

_____
**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: June 9, 2023**

---

[14] Plaintiff makes a similar argument with respect to the ALJ's failure to address off-task time in the decision, contending that the fact of his low platelet count and fatigue were "evidence" that he would be off-task more than 10 percent of the workday; again, diagnoses are not evidence of limitations and Plaintiff identifies no evidence to support greater limitations than the ones the ALJ identified in her RFC determination.